

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## May 19, 2025

SEAN F. McAVOY, CLERK

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON

OPAL V.,[1]

               Plaintiff,

       v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

              Defendant.

No.  1:24-cv-3200-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Opal V. asks the Court to reverse the Administrative Law Judge's (ALJ) repeated denial of Title 16 benefits because of errors

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

DISPOSITIVE ORDER - 1

when evaluating a treating physician's opinions and by not considering the symptoms related to Plaintiff's recurrent hernias. As is explained below, the ALJ so erred. This matter is remanded for further proceedings.

## I.    Background

Plaintiff applied for benefits under Title 16, claiming disability, with an amended alleged onset date of February 3, 2017, at which time she was 26 years old.[3] The agency found that Plaintiff was not disabled and denied benefits.[4] Upon Plaintiff's request, a hearing was held in December 2019 before ALJ Laura Valente, who took testimony from Plaintiff and a vocational expert.[5]

Plaintiff testified she worked part-time as a bell ringer for the Salvation Army in November/December 2017, worked part-time in 2018 with Yakima Valley Farm Workers and Work First, and worked

---

[3] AR 34, 173–78. *See also* AR 1264–73, 1278–84.

[4] AR 95–98, 101–17.

[5] AR 32–52, 118–21.

DISPOSITIVE ORDER - 2

part-time in 2018–19 as a cashier at Walmart.[6] She stated she was fired from the cashier position because she missed work due to mobility problems and pain in her hands.[7] After carpal tunnel release surgeries in March and June 2019, Plaintiff was able to pick up and hold things for a longer period of time and her fingers were no longer completely numb (just the tips).[8] Plaintiff testified she also suffers from allergies and asthma, which causes her to get winded or short of breath, cough, wheeze, and tire easily; she takes numerous medications for her asthma symptoms.[9] Plaintiff also indicated she had an umbilical hernia that caused pain throughout the day and made her nauseated, mentioning that she needed to have gastric bypass surgery before the doctors would fix her hernia.[10]

---

[6] AR 38-39, 41.

[7] AR 39.

[8] AR 45.

[9] AR 42–44.

[10] AR 46-47.

After the hearing, ALJ Valente issued a decision denying benefits.[11] The Appeals Council denied review; and Plaintiff filed an appeal in district court, with the appeal decided by a magistrate judge.[12] The magistrate judge found that the ALJ erred by not providing specific and legitimate reasons for discounting the opinions of Plaintiff's treating doctor, Patrick Moran, DO, and remanded the matter for additional proceedings.[13]

On remand, Marquetta Washington, ARNP, conducted a physical consultative examination in October 2023.[14] In May 2024, ALJ Valente held a second administrative hearing by telephone, during which Plaintiff and a vocational expert testified.[15] Plaintiff talked about her past part-time work.[16] She reported that she had a third child in March

---

[11] AR 12–31.

[12] AR 1–6.

[13] AR 1117–30 (E.D. Wash. No. 1:20-cv-3170-ACE).

[14] AR 1303–10.

[15] AR 1028–57.

[16] AR 1036–42.

2023, after which she developed compartment syndrome in her right arm and surgeries were required.[17] She shared that a relative helps care for the baby, and that the older children, when they are home on weekends or holidays from their residential school for the deaf, help with the younger children.[18] She testified that she still has difficulties with feeling in her right arm and as a result it is difficult to brush her or her children's hair or lift/carry her baby, and that she has trigger finger in three fingers.[19] She has a difficult time doing sign language to communicate with her two oldest children, who are deaf.[20] She uses her left hand to do tasks that she used to do with her right hand, such as pouring milk.[21] As to her asthma, she shared that if she walks too far she will begin breathing heavily and that she has difficulties with strong smells and perfumes; she uses an inhaler; and she sits down

---

[17] AR 1043–45.

[18] AR 1044.

[19] AR 1046.

[20] AR 1046.

[21] AR 1047.

when she has an asthma attacks.[22] She reported that she has 3–4 asthma attacks a week and that she uses her inhaler daily.[23]

Thereafter, the ALJ denied benefits again.[24] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence.[25] The ALJ gave little weight to the statement from the father of Plaintiff's children.[26] As to the medical opinions, the ALJ gave:

- great weight to the evaluating opinions of Dr. Kristen Nestler and the reviewing opinions of the DDS evaluators.

---

[22] AR 1047–49.

[23] AR 1049.

[24] AR 1003–27. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[25] AR 1012–15. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should replace the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[26] AR 1017.

DISPOSITIVE ORDER - 6

- some weight to the evaluating opinions of Dr. Enrique Guzman van Dyken; the evaluating opinions of Marquetta Washington, ARNP; and the reviewing opinions of Dr. Louis Martin, Dr. Alnoor Virji, and Dorothy Leong, MD.

- little weight to the reviewing opinions of Suzanne Castro, PsyD, and the treating opinions of Dr. Patrick Moran.

- no weight to the treating opinion of Dr. Sheila Kredit.[27]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since February 3, 2017, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: right arm compartment syndrome, bilateral carpal tunnel syndrome, left arm DeQuervain's, rheumatoid arthritis, asthma, obesity, and left ear impaction.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

[27] AR 1010–17.

- RFC: Plaintiff had the RFC to perform light work except:

  she can stand and/or walk for 4 hours and sit for 6 hours in an 8-hour workday.  She would need to change positions frequently but can continue working while changing positions. She can never climb ladders, ropes, or scaffolds but can do all other postural activities occasionally.  She can frequently fine finger and gross handle bilaterally.  She must avoid concentrated exposure to temperature extremes, pulmonary irritants, and hazards.

- Step four: Plaintiff can perform past relevant work as a hospital admitting clerk.

- Alternatively at step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff can perform work that exists in significant numbers in the national economy, such as collator operator, small products assembler, and production assembler.[28]

Plaintiff timely requested review of the ALJ's denial of benefits.[29]

---

[28] AR 1006–19.

[29] See 20 C.F.R. §§ 404.981, 422.201.

DISPOSITIVE ORDER - 8

1

## II.    Standard of Review

2     The ALJ's decision is reversed "only if it is not supported by

3  substantial evidence or is based on legal error" and such error

4  impacted the nondisability determination.[30] Substantial evidence is

5  "more than a mere scintilla but less than a preponderance; it is such

6  relevant evidence as a reasonable mind might accept as adequate to

7  support a conclusion."[31]

8

9

10

_____

11  [30] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

12  405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

13  *superseded on other grounds by* 20 C.F.R. § 416.920(a)).

14  [31] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

15  980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

16  1035 (9th Cir. 2007) (The court "must consider the entire record as a

17  whole, weighing both the evidence that supports and the evidence that

18  detracts from the Commissioner's conclusion," not simply the evidence

19  cited by the ALJ or the parties.) (cleaned up).

# III.    Analysis

Plaintiff argues the ALJ erred when evaluating Dr. Moran's treating medical opinions and by not considering the limitations caused by Plaintiff's reoccurring hernias. The Commissioner argues the ALJ's findings are supported by substantial evidence. As is explained below, Plaintiff establishes the ALJ erred.

## A.    Dr. Moran's Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ failed to properly consider the opinion of treating physician Dr. Moran, as directed by the prior court remand. In response, the Commissioner argues the ALJ addressed the prior court's concerns and provided specific and legitimate reasons to discount Dr. Moran's opinions.

### 1.    Treatment and Opinions

Dr. Moran treated Plaintiff and twice set forth his opinions about Plaintiff's work abilities. First, in October 2017, Dr. Moran completed a WorkFirst Documentation Request Form for Medical or Disability Condition, noting that Plaintiff had "severe, persistent asthma" and

"significantly reduced lung capacity," and opined that Plaintiff should be limited to 1 to 10 hours of sedentary work per week.[32]

Two years later, in December 2019, Dr. Moran filled out a "Medical Report" form at the request of Plaintiff's attorney.[33] Dr. Moran indicated Plaintiff had been diagnosed with bilateral carpal tunnel syndrome, right cubital tunnel syndrome, thoracic outlet syndrome, and asthma, and that work would exacerbate her symptoms and therefore she was likely to miss 2 days of work per month."[34] Dr. Moran restricted Plaintiff to sedentary work with occasional use of her bilateral upper extremities for handling and reaching.[35]

## 2.   First ALJ Decision and Court Remand

In her first decision in 2020, ALJ Valente gave little weight to Dr. Moran's opinions because 1) treatment notes showed Plaintiff's asthma was generally well managed when she adhered to treatment;

---

[32] AR 699–701.

[33] AR 1000-02.

[34] AR 1001.

[35] AR 1001–02.

1  2) her breathing difficulties were usually in the context of acute issues,

2  such as exposure to wildfires, not using her inhaler, or smoking

3  cigarettes; 3) the opinion was not consistent with Plaintiff's ability to

4  care for two small children with special needs; and 4) the opinion was

5  not consistent with the record that Plaintiff's impairments improved

6  with treatment, including her carpal tunnel release surgeries.[36]

7       When reviewing ALJ Valente's first denial, the magistrate judge

8  found that the only medical opinions that the ALJ relied on that

9  contradicted the opinions of Dr. Moran were the state agency non-

10  examining physicians' opinions that were rendered before the

11  production of treatment records relating to Plaintiff's carpal tunnel

12  syndrome diagnoses and subsequent treatment. Second, the magistrate

13  judge found that the ALJ's non-compliance rationale was unsupported

14  because the medical record did not clearly reflect that Plaintiff's

15  breathing issues resolved with treatment. Third, the magistrate judge

16  found that the ALJ failed to "describe what specific childcare activities

17  of Plaintiff contradicted the opinion of Dr. Moran that Plaintiff was

18  _____

19  [36] AR 1124–26.

able to perform only a reduced range of sedentary work."[37] Finally, the magistrate judge determined that the record did not support the ALJ's finding that Plaintiff's symptoms, particularly her hand/wrist symptoms in 2017–early 2019, improved with treatment. For these reasons, the magistrate judge remanded the matter to the ALJ to reconsider the opinions of Dr. Moran and perform a new disability analysis.

### 3.    Current Findings by ALJ Valente

On remand, ALJ Valente again gave little weight to Dr. Moran's opinions, finding: 1) the absentee limitations were based largely on Plaintiff's respiratory impairments, which improved with treatment, and for which the ALJ accounted for by limiting Plaintiff's exposure to pulmonary irritants to 4 hours of standing and walking; 2) they were inconsistent with Plaintiff's ability "to engage in a full range of daily tasks, care for 3 children to include an infant and 2 children with special needs, and to engage in part-time employment"; and 3)

---

[37] AR 1125.

inconsistent with Plaintiff's performance during the physical consultative examination.[38]

### 4.  Standard

Based on the regulations and standards in effect when Plaintiff filed for disability, the evaluation of medical opinions depends on the nature of the medical relationship, i.e., whether the medical professional treated or examined the claimant or simply reviewed medical records.[39] Generally, more weight is given to the opinion of a treating physician than to the opinion of an examining physician, and the opinions of both treating and examining physicians are given more weight than the opinion of a reviewing physician.[40]

Because Dr. Moran's treating opinions are contradicted by the reviewing opinions of Dr. Martin and Dr. Virji, who opined that Plaintiff could perform light work, the ALJ was to provide specific and

---

[38] AR 1016.

[39] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[40] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) (superseded by statute on other grounds).

legitimate reasons for discounting Dr. Moran's treating opinions, if the reviewing opinions were supported by independent evidence.[41]

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[42] Here, the Court is also constrained by the law-of-the-case doctrine, which "generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case."[43]

### 5.  Analysis

#### a.  *Respiratory impairments improved with treatment*

Plaintiff acknowledges that substantial evidence supports the ALJ's finding that Plaintiff's asthma eventually improved with treatment, but Plaintiff contends that such improvement did not occur until early 2021 and therefore does not serve as a basis to discount Dr. Moran's opinions prior thereto. Plaintiff highlights that the

---

[41] *Lester*, 81 F.3d at 830.

[42] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[43] *Fallon v. Dudek*, No. 24-241, 2025 WL 1187015 (9th Cir. Apr. 24, 2025) (quoting *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016)).

magistrate judge previously determined that the medical record shows that Plaintiff continued to struggle with asthma through at least September 2019.[44] The Commissioner argues that, because Plaintiff's asthma is an impairment that could be treated effectively, it therefore cannot be considered disabling. This argument is not compelling.

The ALJ clearly failed to abide by the law of the case as to Plaintiff's asthma and failed to consider the reoccurring nature of Plaintiff's asthma symptoms. The ALJ should not have disregarded Dr. Moran's opinions for the entire period due to Plaintiff's improved asthma symptoms, which occurred at least sometime after September 12, 2019, which is the last asthma-related medical record cited by the magistrate judge.[45] On remand, the ALJ is to determine when, after September 12, 2019, and in proximity to March 2021, when Plaintiff began taking Spiriva,[46] Plaintiff's asthma symptoms improved to the

---

[44] AR 1127 (citing AR 538, 558, 580, 583-584, 589, 594, 601, 610, 648, 651-659, 677, 736, 752, 772, 780, 826, 901-904, 933-946).

[45] AR 901.

[46] AR 1906.

extent inconsistent with Dr. Moran's less than sedentary-work opinion.[47]

### b. _Activities of daily living and part-time employment_

The ALJ also discounted Dr. Moran's opinion because it was inconsistent with Plaintiff's care for three children, full range of daily tasks, and part-time employment. Like the ALJ did in her prior decision, the ALJ again fails to adequately explain why these activities are inconsistent with Dr. Moran's opinions. The ALJ did not explain how Plaintiff's ability to do household chores such as cleaning, laundry, and dinner, getting her children ready for school, making lunch, and playing with them for part of the day[48]—activities that can be done at her own pace and spread out during the day or week and which involve her children being out of the house for several hours—were

---

[47] _See, e.g._, _Smith v. Kijakazi_, 14 F.4th 1108, 1113–16 (9th Cir. 2021) ("The ALJ therefore erred by disregarding _all_ of Smith's testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony.").

[48] AR 682.

inconsistent with Dr. Moran's opinion that Plaintiff would be limited to sedentary work for a full-time job.[49] The record reflects that over the course of the relevant period—a period of more than 7½ years—Plaintiff's impairments, including her asthma, hernias, and hand/wrist impairments, were not static, as she underwent medication adjustments and carpal tunnel surgeries. Moreover, without discussing at least some of the evidence consistent with Dr. Moran's opinions, the ALJ seems to have cherrypicked evidence contrary to Dr. Moran's opinions.[50] For instance, evidence consistent with Dr. Moran's opinions include an August 2018 treatment note wherein Plaintiff reported that her children were attending elementary school and she was working

---

[49] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding).

[50] While an ALJ need not address every piece of evidence, an ALJ "may not ignore significant probative evidence that bears on the disability analysis." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

part-time, although her "pain is intense in her hands and wrists as well as her back and knee."[51] Then a later medical record reflects that, by at least November 28, 2023, her two oldest children (then ages 12 and 10) were attending a residential school for the deaf, so they were out of the house (other than during school breaks) from Sunday evening to Friday afternoon.[52] In addition, Plaintiff's third child, for whose care the ALJ relied on to discount Dr. Moran's opinions, was not born until March 2023.[53]

In addition, the ALJ failed to adequately explain why Plaintiff's part-time (and relatively short-term) work is inconsistent with Dr. Moran's opinions.[54] As the Ninth Circuit has recognized, one's

---

[51] AR 742.

[52] AR 1044, 2606, 2613, 2619. It is unclear when her children began attending residential school.

[53] AR 1014, 1016.

[54] *See, e.g.*, AR 1001, 1012–16, 1037–39.

ability to acquire a string of short-term jobs is not sufficient to show that the individual can sustain gainful work.[55]

The ALJ failed to adequately explain and support her decision to give little weight to Dr. Moran's opinions based on Plaintiff's activities.

### c.   *Physical consultative examination*

Finally, the ALJ discounted Dr. Moran's opinions because they were inconsistent with Plaintiff's performance during her physical consultative evaluation with ARNP Washington in October 2023.[56] Based largely on normal examination findings, including even and unlabored respiration and an ability to pick up a coin, button/unbutton, and zip/unzip with little effort, ARNP Washington opined that Plaintiff could perform light work with no environmental or manipulation restrictions.[57] The ALJ accepted ARNP Washington's light-work opinion but then restricted Plaintiff to frequent manipulation, only 4

---

[55] *See Lingenfelter*, 504 F.3d at 1038; *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 693–94 (9th Cir. 1999).

[56] AR 1016.

[57] AR 1303–10.

hours of standing/walking, and no temperature extremes or pulmonary irritants.[58]

In neither the ALJ's analysis of Dr. Moran's opinions or ARNP Washington's opinions, did the ALJ consider that Plaintiff's respiratory improvements occurred *after* Dr. Moran issued his opinions and *before* ARNP Washington's opinions. Moreover, Plaintiff's carpal tunnel release surgeries occurred about 6–9 months before Dr. Moran's second opinion. As the magistrate judge previously recognized, although Plaintiff had carpal tunnel release surgeries in March 2019 (right) and June 2019 (left), the treatment notes before Dr. Moran issued his second opinion in December 2019 did not reflect that all of Plaintiff's symptoms were completely resolved.[59] Regardless, any observed improvement by ARNP Washington in October 2023 was not a legitimate basis to discount Dr. Moran's opinions as they pertain to the Plaintiff's hand/wrist symptoms in the period prior to and adjacent to her surgeries.

---

[58] AR 1016.

[59] AR 1126.

### 6.    Conclusion

By failing to distinguish between pre-improvement and post-improvement periods as to Plaintiff's impairments and symptoms, as well as by failing to fairly consider Plaintiff's childcare, activities, and part-time employment, the ALJ erred when discounting Dr. Moran's opinions.

**B.    RFC: the ALJ is to reassess on remand.**

Plaintiff argues the ALJ failed to properly consider all her impairments, namely her umbilical hernia, when assessing the RFC. In response, the Commissioner highlights that, even though the ALJ did not identify Plaintiff's umbilical hernia as a severe impairment, the ALJ did consider Plaintiff's umbilical hernia when discounting her overall symptoms for several reasons, including that Plaintiff improved with treatment, cared for small children with special needs, and worked despite her allegedly disabling limitations.[60]

Because this matter is being remanded due to the ALJ's errors when evaluating Dr. Moran's opinion, the ALJ is to reassess Plaintiff's

---

[60] ECF No. 10 at 5–7.

RFC. When reassessing Plaintiff's RFC, the ALJ must consider Plaintiff's recurrent hernias. The medical record reflects that after a hernia repair surgery in 2015, a hernia returned about a year later, and she had surgery again to remove the hernia in April 2016.[61] By November 2016, she was having abdominal pain that she believed was related to a hernia.[62] No masses were detected then, but in January 2017, imaging revealed a hernia and mild inflammatory stranding in the tissue adjacent to the hernia.[63] During the December 2019 hearing, Plaintiff testified that her hernia caused pain and nausea and limits her ability to lift.[64] In January 2020, Plaintiff sought emergency care for her hernia pain and the provider discovered a "notable hernia."[65] A year later, in January 2021, Plaintiff sought emergency care for

---

[61] AR 45–47, 522, 637, 1682.

[62] AR 551–53, 588.

[63] AR 585–86.

[64] AR 1233–34.

[65] AR 1682–84.

1  abdominal pain although no hernia mass was felt.[66] Yet, a reducible

2  and mildly tender umbilical hernia was felt by a provider a few months

3  later in May 2021.[67] This hernia was again felt in June 2021, with

4  Plaintiff reporting resulting nausea.[68] In March 2022, when Plaintiff

5  sought treatment for her umbilical hernia, which she reported was

6  getting progressively worse, the physician felt a "palpable baseball-

7  sized umbilical hernia that is fairly firm to palpation but is reducible

8  with holding" and referred Plaintiff to bariatric surgery so that she

9  could possibly have surgery for both her hernia and obesity at the same

10  time.[69] In May 2022, Plaintiff had surgery for her recurrent umbilical

11  surgery.[70] In November 2023, Plaintiff reported to a treating provider

12  that she was concerned that her umbilical hernia was coming back;

13  although no palpable hernia was felt on examination and ultrasound

---

15  [66] AR 1680–81.

16  [67] AR 1675.

17  [68] AR 1673.

18  [69] AR 2000–01.

19  [70] AR 1750.

was ordered, and the ultrasound revealed several fat-containing periumbilical ventral hernias.[71]

On remand, the ALJ is to consider how Plaintiff's hernias impact her RFC, particularly her ability to lift and carry.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. Plaintiff's requested remand for further proceedings is granted. On remand, this matter is to be assigned to a new ALJ.[72] The newly assigned ALJ is to perform the sequential disability analysis, with meaningful articulation and evidentiary support. The ALJ must consider Plaintiff's hernias and whether Plaintiff's asthma, hand/wrist impairments, and other impairments improved, and if so when.[73]

---

[71] AR 2615–17, 1870.

[72] *See* 20 C.F.R. § 404.940; *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001).

[73] *See Smith*, 14 F.4th at 1113–16 (requiring the ALJ to consider separate periods related to improvement).

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 19th day of May 2025.

_Edward F. Shea_
_____
**EDWARD F. SHEA**
Senior United States District Judge